**Jerry DANIELS**

v.

**WESTINGHOUSE ELECTRIC CORPORATION.**

Civ. No. 1:89–cv–2175–ODE.

United States District Court,
N.D. Georgia,
Atlanta Division.

Nov. 5, 1990.

Robert C.D. McDonald, Norcross, Ga., for plaintiff.

Gavin S. Appleby, Paul T. Stagliano, Paul, Hastings, Janofsky & Walker, Atlanta, Ga., for defendant.

## ORDER

ORINDA D. EVANS, District Judge.

This sex, race, and age discrimination case is before the court on Defendant's objections to the Magistrate's Report and Recommendation.

Plaintiff is a white male of forty-seven years. This case arises from the events surrounding his termination from Defendant Westinghouse Electric Corporation ("Westinghouse") in 1988, when he was forty-five.

Westinghouse hired Plaintiff as an engineer/estimator in 1976. Plaintiff does not hold a degree in engineering, but he does have experience in the electrical, electronics, and other specialized fields. Westinghouse hired him to work for the Westinghouse Instrument Services Company ("Instrument Services"). Initially, his work there consisted of analyzing plans and specifications of electro-mechanical control systems and estimating for bidding purposes the costs of systems installations. After some months, however, he became Projects Engineer and began to manage and supervise the estimation process. He left Westinghouse in 1980 to work for the Bechtel Corporation, but returned to Westinghouse by 1981 to take over the position of Manager of Installation Service. In 1986, he assumed the post of Systems Projects Manager in the newly created Systems Engineering and Training ("SET") group within Instrument Services. SET was located in Atlanta. As one of the five men in the management group of SET, Plaintiff had broad authority over its operations. There is no dispute that Plaintiff performed his job satisfactorily.

In March, 1988, Mr. Jared Long became General Manager of the larger division of which Instrument Services and SET were each smaller parts. He shows by unrebutted affidavit that he designed a nationwide plan of reorganization of his larger division based on his conclusion that it had profitability and organizational problems. As regards the smaller SET group in particular, he had concluded that substantial losses in that group made reorganization there appropriate. In April, 1988, Long divided Instrument Services into three units, one of which was called Applied Technology Services ("ATS"). He integrated the SET group into ATS. He also selected Mr. Robert Bagwell as National Manager of ATS.

Bagwell states in his affidavit that he decided to cut losses at SET, now a part of ATS, by eliminating four of its five managers. He recommended to Long that three be laid off (including Plaintiff), that one be assigned other duties, and that one be designated interim manager at the Atlanta ATS office.

On April 27, 1988, Bagwell notified Plaintiff that Westinghouse would eliminate his position pursuant to a reduction in force and that Westinghouse would lay off Plaintiff effective May 31, 1988. Bagwell states that he wished to fill the position of ATS Manager in Atlanta with a person holding, inter alia, a degree in electrical engineering. He hired Ms. LaDoris Harris, a black woman who at the time was twenty-eight years old. Harris had been with Westinghouse for six years prior to being hired as Manager of ATS.

On October 20, 1988, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging age, race, and sex discrimination in his termination. On June 29, 1989, the EEOC issued him a notice of the right to sue, and he then filed his complaint in this court on September 26, 1989. No issues are raised herein as to the timeliness of the EEOC charge or the complaint.

The complaint sets forth two claims of discrimination in employment based on race and sex under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, and one claim of age discrimination under the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.* ("ADEA"). In essence, Plaintiff alleges that his termination in combination with the hiring of a young black woman as Manager of ATS constitutes unlawful discrimination based on age, race, and sex.

Westinghouse filed a motion for summary judgment on June 4, 1990. The motion was thereafter submitted to the Magistrate, who issued a Report and Recommendation. The Magistrate recommends that the court deny Westinghouse's motion, concluding that Plaintiff has established a prima facie case on each of his three claims of discrimination.

Westinghouse objects to the Magistrate's determination that Plaintiff has made out a prima facie case. First, Westinghouse objects to the Magistrate's finding that a genuine issue exists as to whether Plaintiff was qualified for the position given to Harris. And second, Plaintiff objects to the Magistrate's conclusion that Westinghouse's stated reason for terminating Plaintiff could be deemed a pretext for discrimination. The court finds for the reasons set forth below that the Magistrate correctly concluded that Plaintiff raises a genuine issue as to job qualification. However, the court also finds that Plaintiff has not shown evidence of discriminatory intent. For that reason, Plaintiff's claims must fail. Therefore, the court declines to adopt the Report and Recommendation of the Magistrate.

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the [Defendant] is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In ruling on Defendant's motion, the court must view the evidence in a light most favorable to Plaintiff. *Adickes v. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). To prevail in its motion for summary judgment, Defendant must show that the evidence is insufficient to establish an essential element of Plaintiff's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). If Defendant makes a sufficient showing, then Plaintiff "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corporation*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (quoting Fed. R.Civ.P. 56(e)). If the evidence supporting Plaintiff's claims is insufficient for a jury to return a Plaintiff's verdict, or is merely colorable or not significantly probative, then Defendant is entitled to summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). If, however, reasonable minds could differ as to the import of the evidence, and a reasonable interpretation of the evidence could lead to a Plaintiff's verdict, then summary judgment is inappropriate. *Id.* at 251–52, 106 S.Ct. at 2511–12. In addition, the court is mindful of the peculiarly fact-intensive nature of cases involving allegations of discrimination. *See, Grigsby v. Reynolds Metals Co.*, 821 F.2d 590, 595 (11th Cir. 1987).

■ The Magistrate appropriately used the "modified" *McDonnell Douglas* test to evaluate Plaintiff's prima facie showing of age, sex, and race discrimination.[1] *See,*

---

1. The contours of the *McDonnell Douglas* progeny tests are the same under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and the Age Discrimination in Employment Act, 29

*Verbraeken v. Westinghouse Electric Corp.,* 881 F.2d 1041, 1045 (11th Cir.1989) (citing *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)). A Plaintiff in a reduction-in-force case may establish a prima facie case under the "modified" test. *Mauter v. Hardy Corp.,* 825 F.2d 1554, 1556–57 (11th Cir.1987). A prima facie showing does not necessarily allow a plaintiff to survive summary judgment. *See, Grigsby v. Reynolds Metals Co.,* 821 F.2d 590, 595 (11th Cir.1987).

The modified test is this: first, a plaintiff must demonstrate that he was in a protected group and was adversely affected by an employment decision; second, he must show that he was qualified for his former position or for another position at the time of being adversely affected; and third, he must produce circumstantial or direct evidence by which a factfinder might reasonably conclude that the employer intended to discriminate on the basis of age, sex, or race in reaching the decision at issue. *Verbraeken,* 881 F.2d at 1045–46.

The courts have been careful to remark that the test is not a rigid one. A neat three-prong legal test should not straightjacket the intensely factual nature of inquiries into alleged discrimination. *See, McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824; *Carter v. City of Miami,* 870 F.2d 578, 582–83 and 583 n. 12 (11th Cir. 1989).

Because Plaintiff asserts three separate claims of discrimination, the court will address each claim in turn in testing the sufficiency of his prima facie case.

### Age Discrimination under ADEA

■ Westinghouse contends that Plaintiff has not made a sufficient showing as to the second and third *McDonnell Douglas* requirements. It argues that Plaintiff has not shown that he was qualified for the job which went to Harris and that Harris did not replace Plaintiff. Westinghouse also

contends that there is no evidence that it intended to discriminate based on age.

As regards job qualifications, Plaintiff offers the deposition testimony of Harris to support his contention that Harris replaced Plaintiff. By using the term "replace", he appears to be arguing that this is a simple case of one person being fired that another may take his place. That being the case, Plaintiff would still be qualified for the job given to Harris. In addition, Plaintiff argues that he was anyhow qualified for the job given to Harris.

Plaintiff's argument that Harris "replaced" him is without merit. There is no dispute in this case that Westinghouse reorganized the division containing Plaintiff's work group and that, as a part of the reorganization, Westinghouse eliminated some jobs—including plaintiff's—altogether. This action is consistent with Long's and Bagwell's statements that poor profitability motivated their decision to eliminate the SET managerial group in favor of a single manager in a newly created division. Plaintiff offers no evidence to rebut Westinghouse's evidence on this score.

■ Plaintiff's job requirements argument does raise a genuine issue for trial, however. Westinghouse required that the Manager of the new ATS division hold an engineering degree and possess a background in computers. Harris has both; Plaintiff lacks a college degree. However, while Plaintiff does not have a degree, there is evidence in the record that Westinghouse had previously placed Plaintiff in a position for which a college degree was required. Westinghouse does not attempt to explain why it should waive the degree requirement for Plaintiff for one job but not for another. Furthermore, the record contains conflicting evidence as to what precise computer skills were required for the new position. Plaintiff appears from the documentary evidence presented in this case to have worked with computers and computer software while at Westinghouse, so this court cannot conclude that he did

U.S.C. § 621 *et seq.* ("ADEA"). *See, Williams v. General Motors Corp.,* 656 F.2d 120, 127–28 (5th Cir. Unit B 1981); *see also, Burns v. Gadsden*

*State Community College,* 908 F.2d 1512, 1517–18 (11th Cir.1990) (noting parallel use of test).

not have the kind of computer background required for the position of ATS Manager. Therefore, there is evidence sufficient to raise a jury question as to whether Plaintiff was qualified for the job given to Harris even though his own job was eliminated. Thus, Plaintiff has met his initial burden under the second *McDonnell Douglas* requirement.

■ As to the third requirement, that of showing discriminatory intent, Plaintiff has not made an adequate showing. In a reduction-in-force ADEA claim, to satisfy the third requirement of the modified *McDonnell Douglas* showing, Plaintiff must produce

> some evidence that an employer has not treated age neutrally, but has instead discriminated based upon it. Specifically, the evidence must lead the factfinder reasonably to conclude either (1) that defendant consciously refused to consider retaining or relocating a plaintiff because of his age, or (2) defendant regarded age as a negative factor in such consideration.

*Williams v. General Motors Corp.,* 656 F.2d 120, 129–30 (5th Cir. Unit B 1981). The only evidence offered by Plaintiff to show discriminatory intent is the age difference between Plaintiff[2] and Harris. Plaintiff does not point to any suggestive statements made by persons at Westinghouse; nor to documents; nor to any other reliable evidence.[3] The deposition remarks of Plaintiff and Mr. William McDonald, a co-worker, provide unsubstantiated opinions as to putatively discriminatory hiring practices by Westinghouse, but such does not constitute reliable evidence of discriminatory intent.

The court concludes that Plaintiff has not brought forth sufficient evidence as to intent. Alternatively, if evidence of the age difference between Plaintiff and Harris satisfies the *Williams* Court's require-

ment of "some evidence", *see, supra,* that evidence would not enable the finder of fact to reach any conclusion about Westinghouse's discriminatory intent or lack thereof. *Id.; Palmer v. District Bd. of Trustees of St. Petersburg Junior College,* 748 F.2d 595, 599–600 (11th Cir.1984).

■ Though it is not strictly necessary for the court to reach the issue of pretext, one of Plaintiff's contentions on that score bears mentioning. Defendant produces evidence tending to show that it terminated Plaintiff as part of an internal reorganization. Plaintiff appears to challenge the reorganization as a pretext for his termination and the hiring of a young black woman to take his place.

Plaintiff asserts that "Defendant has offered no specific evidence of the poor performance of the SET group." Defendant, however, produces the affidavit of Long, who claims to be responsible for the reorganization. Long explains why Westinghouse undertook the reorganization and what form the reorganization took. Bagwell supplements this in his affidavit by stating that he terminated Plaintiff and Plaintiff's co-managers in order to cut losses. Against this, Plaintiff says that Westinghouse offers no hard data to support its claims of losses at SET. But Plaintiff himself offers no evidence in support of his pretext argument and no evidence to rebut Westinghouse's affidavits. He does not allege or show, for instance, that SET was profitable. He does not offer testimony that Westinghouse had other motivations besides those stated by Long and Bagwell. He does question, in somewhat puzzling fashion, how much Westinghouse stood to save at SET by firing five managers, each earning over $60,000.00 per year, with one who earned $55,000.00. The answer would seem clear, and the numbers offered tend to support Westinghouse's position that the company was motivated by the desire to streamline management and cut costs.

---

**2.** And his four co-managers at SET, all in their forties.

**3.** Plaintiff does not argue the merits of his claims in any structured manner, leaving the court to guess about what evidence he means to offer for each specific claim and each *McDonnell Douglas* element.

To conclude, finding that Plaintiff has not met his burden of producing evidence tending to show that Westinghouse intended to discriminate against him based on his age, the court concludes that Plaintiff has not made a prima facie showing of age discrimination. Summary judgment on his ADEA claim is appropriate. *See, Grigsby v. Reynolds Metals Co.*, 821 F.2d 590, 595–96 (11th Cir.1987) (discussing summary judgment standard in employment discrimination cases).

### Sex Discrimination under Title VII

Having found that Plaintiff has met his burden under the second prong of the modified *McDonnell Douglas* test, that of showing qualification for a particular job, the court need only address Plaintiff's showing under the third prong, that of showing discriminatory intent. So, the instant question is whether Plaintiff has produced evidence of Westinghouse's intent to discriminate based on sex. As with his age discrimination claim, Plaintiff offers no evidence tending to show that Westinghouse intended to discriminate based on sex. There are unsubstantiated and vague remarks in McDonald's deposition testimony regarding alleged hiring quotas at Westinghouse, but these remarks are without probative value. Again, there is the bare fact of Plaintiff's being male and Harris being female, but this gives rise to no inferences of discrimination absent other evidence. *See, Palmer v. District Bd. of Trustees of St. Petersburg Junior College*, 748 F.2d at 599–600. The court finds no other evidence of discriminatory intent in its review of the record. Summary judgment is therefore appropriate on Plaintiff's sex discrimination claim.

### Race Discrimination under Title VII

Again, the court need only inquire as to whether Plaintiff has met his burden under the "intent" prong of the modified *McDonnell Douglas* test.

Plaintiff offers evidence that Harris "occupied a unique status with Westinghouse as a public relations advocate communicating corporate interest in the concerns of minority communities." *See, infra*, n. 6. From this, Plaintiff deduces that "it may reasonably be inferred that Defendant's intent to utilize Harris as 'a successful role model for communicating Westinghouse's interest in career opportunities for minorities' especially distinguished her for an upper management position as proof of the possibilities at Westinghouse for minority advancement." (Citations omitted).[4] Plaintiff submits no evidence to support its conclusion. Plaintiff offers no evidence of any kind as to Westinghouse's hiring policies and practices. Furthermore, the court declines to infer from evidence of what Plaintiff concedes to be "laudable" behavior in minority affairs on Westinghouse's part that Westinghouse intended to discriminate against Plaintiff based on race.

Absent probative evidence other than the mere difference in race between Plaintiff and Harris, the court finds that Plaintiff has not made a prima facie showing of race discrimination. Summary judgment is therefore appropriate on this claim.

Accordingly, for the reasons set forth herein, Defendant Westinghouse's motion for summary judgment is GRANTED, and judgment shall be entered in favor of Defendant.

SO ORDERED.

---

**4.** Plaintiff submits letters from Westinghouse to various persons, including Harris, relating to Harris's participation in minority affairs at Westinghouse. Harris participated in the "Spokespersons Program", where she apparently promoted careers in technical areas to people of college age or younger. The content of the letters referring to her activities is benign as far as evidence of discriminatory intent.